IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIARA MENA, | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 5:23-cv-02688-JMG |
| | : | |
| EAST PENN MANUFACTURING, | : | |
|       Defendant. | : | |

**MEMORANDUM OPINION**

GALLAGHER, J.                                                                                       December 30, 2024

**I.    OVERVIEW**

Plaintiff Kiara Mena brings this employment action against Defendant East Penn Manufacturing alleging claims of sex discrimination, disability discrimination, retaliation, and constructive discharge. Defendant has moved for summary judgment to dismiss the claims against it. For the following reasons, the Motion is granted.

**II.    BACKGROUND**

On October 10, 2018, Plaintiff began her employment with Defendant as a Gel Fill / Rack in the S-1 Plant ("S-1") and Gel Fill Department ("Gel Fill"). Pl.'s Statement of Undisputed Facts at ¶ 1. S-1 is a building made up of about ten departments and it creates batteries. *Id*. at ¶ 4. After Plaintiff started working in S-1 as a Gel Fill / Rack, she became a Floater. *Id*. at ¶ 2. As a Floater, Plaintiff performed a variety of jobs as needed, including Mixer, Material Handler, and Machine Operator. *Id*. at ¶ 3.

A common thread connecting all these roles was acid. Defendant makes acid by mixing three ingredients in a tank. *Id*. at ¶ 34. When Plaintiff worked as a Floater, she encountered acid in

certain rooms and touched batteries that contained acid. *Id*. at ¶ 35. When she worked as a Mixer, she placed the ingredients in the tank to create acid. *Id*. Plaintiff believed that every job in Gel Fill dealt with lead and acid. *Id*. at ¶ 38.

Plaintiff found out in April 2022 that she was pregnant. *Id*. at ¶ 55. She claims that her OB/GYN advised her that her pregnancy was high risk. *Id*. at ¶ 56. Later in the month, on April 24, 2022, Plaintiff visited a nurse in Defendant's Medical Department and presented an undated medical note from a medical provider at St. Joseph confirming her pregnancy. *Id*. at ¶¶ 65, 67. During that visit, she reported that she had been persistently vomiting and sleeping poorly for weeks. *Id*. at ¶ 74. Plaintiff also explained that she did not want to do any heavy lifting or deal with lead and acid because of her pregnancy. *Id*. at ¶¶ 68-69.

Before her pregnancy in 2022, Plaintiff saw women working in janitorial positions. *Id*. at ¶ 72. Although she did not know their individual circumstances or the circumstances surrounding their janitorial jobs, she assumed they were pregnant and moved to janitorial as an accommodation. *Id*. Plaintiff told the nurse she also wanted to move to a different work environment or a different job—like the lunchroom, janitorial, or laundry. *Id*. at ¶ 70. But she had not filed any accommodation requests. *Id*. at ¶ 75. So, the nurse informed her that she needed to submit specific medical restrictions from her physician and sent her home from work until her vomiting improved. *Id*. at ¶¶ 75-77

Plaintiff submitted her first accommodation request in May 2022. On April 28, 2022, Plaintiff received a medical note from a health care provider at St. Joseph stating that she could return to work with restrictions of not lifting more than twenty-five pounds and having at least

three, fifteen-minute breaks. *Id*. at ¶ 79. She provided this note to Defendant on May 2, 2022. *Id*. at ¶ 81.

In response to the first request, Defendant confirmed that it would provide Plaintiff with lifting and break accommodations. *Id*. at ¶ 81. It therefore placed Defendant in Material Handling—a job that was considered light duty. *Id*. at ¶ 83. But in Material Handling, Plaintiff's accommodations were not adhered to. So, she complained to Defendant's Human Resources Department ("HR Department") that she was not being accommodated properly and that she was being discriminated against based on her pregnancy because other pregnant women were allowed to work in different departments until they gave birth. *Id*. at ¶¶ 84-87.

Although Plaintiff did not follow up with this individual after their conversation, she submitted her second accommodation request. On May 5, 2022, she visited a health care provider at St. Joseph and received a medical note stating that she could return to work on May 7, 2022, with the restrictions of not being around "chemicals such as lead and acid" and being in a "safe" environment. *Id*. at ¶¶ 88-89. Plaintiff provided this note to Defendant on May 8, 2022. *Id*. at ¶ 91.

Defendant also tried to accommodate the second request. Specifically, a nurse in the Medical Department told Plaintiff that she could be moved to the dry end of her department to avoid acid exposure. *Id*. at ¶ 91. Since Plaintiff explained that the acid fumes were burdensome to her no matter where was in her department, the nurse offered to provide her with a respirator that used charcoal filters to eliminate acid fumes. *Id*. at ¶ 93. The nurse also told Plaintiff to talk to Jason Geist, a third-shift foreman, about finding a position in S-1 that did not involve lead and acid. *Id*. at ¶ 95. Because the nurse told Plaintiff that she could be accommodated in S-1, where

she claimed that she was exposed to lead and acid daily, she went to Mr. Geist and told him that she was clocking out and never coming back. *Id.* at ¶ 96. She never returned to work. *Id.*

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). A fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

### IV. DISCUSSION

#### A. Sex Discrimination

Plaintiff brings sex discrimination claims under Title VII and the Pennsylvania Human Relations Act ("PHRA") against Defendant in Counts I and VI of the Amended Complaint. "Under Title VII and the PHRA, it is unlawful for an employer to 'discharge any individual' on the basis of sex." *Goodrich v. Tonelli's Pizza Pub*, 388 F. Supp. 3d 523, 526 (E.D. Pa. 2019) (citing 42 U.S.C. § 2000e-2(a)(1); *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[T]he PHRA is applied in accordance with Title VII.")). In cases lacking direct evidence of discrimination—like this one—courts apply the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792, 793 (1973).

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Goodrich*, 388 F. Supp. 3d at 526-27. To demonstrate a *prima facie* case of sex discrimination, the plaintiff must show that "1) [she] is a member of a protected class, 2) [she] was qualified for the position [she] sought to attain or retain, 3) [she] suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (citation omitted). If the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to "articulate 'some legitimate, nondiscriminatory reason' for the adverse employment action." *Goodrich*, 388 F. Supp. 3d at 527 (citation omitted). To overcome summary judgment, the plaintiff must "prove that the employer's proffered reasons are a pretext for discrimination." *Id.* (citations omitted).

Defendant does not dispute the first two elements of Plaintiff's *prima facie* case. So, the Court will assume that they are met and focus on the third and fourth elements—whether Plaintiff

5

suffered an adverse employment action and whether Plaintiff has successfully raised an inference of intentional discrimination.

At the third element, the parties claim that "[a]n 'adverse employment action' . . . is 'an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" Def.'s Mem. Supp. Summ. J., ECF No. 33, at 3 (quoting *Friel v. Mnuchin*, 474 F. Supp. 3d 673, 686 (E.D. Pa. 2020)). Plaintiff argues that she suffered an adverse employment action when Defendant failed to accommodate her requests for frequent breaks, restrictions on lifting, and restrictions on exposure to lead and acid. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 6. Defendant counters that it accommodated Plaintiff's requests for breaks and restrictions on lifting and offered to accommodate her restriction on exposure to lead and acid, which she rejected by quitting and walking off the job. Def.'s Mem. Supp. Summ. J., ECF No. 33, at 4.

Recent decisions by the Supreme Court of the United States and Third Circuit show that the parties are wrong about the definition of an adverse employment action. To be sure, the traditional rule was that an adverse employment action required a "'serious and tangible' employment-related harm." *Peifer v. Bd. of Prob. & Parole*, 106 F.4th 270, 277 (3d Cir. 2024) (quoting *Komis v. Sec'y of U.S. Dep't of Lab.*, 918 F.3d 289, 292 (3d Cir. 2019)). But in *Muldrow v. City of St. Louis*, the Supreme Court rejected that the harm must be "serious" and instead explained that an employee needs to "show some harm." 144 S. Ct. 967, 974 (2024). The Third Circuit acknowledged the change caused by *Muldrow* and held that an "adverse employment action means simply that the employee suffered 'some harm' to a term or condition of employment—in other words, that the employer treated the employee 'worse' because of a protected characteristic." *Peifer*, 106 F.4th at 277 (quoting *id.*).

6

Turning to the facts of the case, there exists a factual dispute about whether Plaintiff was accommodated. In May 2022, Plaintiff submitted two medical notes: the first asked for accommodations of not lifting more than twenty-five pounds and having at least three, fifteen-minute breaks and the second asked for an accommodation limiting Plaintiff's exposure to "chemicals such as lead and acid." Pl.'s Statement of Undisputed Facts at ¶¶ 79, 89. Defendant claims that it accommodated both requests—the first by placing Plaintiff in a "light duty" job in Material Handling and the second by offering to move her to the dry end of her department and offering her a respirator. *Id*. at ¶¶ 81, 83, 91, 93. Plaintiff denies that Defendant accommodated either of her requests, arguing that she was still lifting heavy objects, not receiving all her breaks, and still being exposed to lead and acid. *Id*. at ¶¶ 84-87, 93.

Under *Muldrow*'s new regime, this factual dispute is enough for Plaintiff to meet the third element. Traditionally, employer actions that were "serious" enough to qualify as adverse employment actions included alterations to "an employee's compensation, terms, conditions, or privileges of employment." *Friel*, 474 F. Supp. 3d at 686. None of those actions are present in the record. But, as discussed earlier, *Muldrow* has lowered the bar and Plaintiff simply needs to show that she suffered "some harm." *Peifer*, 106 F.4th at 277. If Plaintiff is right that Defendant did not actually accommodate her, then she did suffer "some harm"—she was moved to a different job with the understanding that she would receive accommodations, but the accommodations were never given to her. Therefore, Plaintiff meets the third element of her *prima facie* case.

Finally, to satisfy the fourth element of her case, Plaintiff must show that the adverse employment action happened under circumstances that raise an inference of intentional discrimination. *See Mandel*, 706 F.3d at 169. "A plaintiff may satisfy the fourth element of a *prima facie* case . . . by presenting evidence that similarly situated employees, outside of the protected

7

class, were treated more favorably." *Fennell v. Comcast Cable Commc'ns Mgmt., LLC*, 628 F. Supp. 3d 554, 573 (E.D. Pa. 2022) (quoting *id*. at 170) (italics added). "A determination as to whether an employee is 'similarly situated' generally takes into account 'the job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace.'" *Id*. (citations omitted). Because Plaintiff's protected class is pregnant woman, she must show that "'similarly situated' non-pregnant female or male [employees] were treated more favorably than her." *Parish v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 628 (W.D. Pa. 2019).

Plaintiff fails to show that similarly situated employees were treated more favorably than her. She argues that she has satisfied the fourth element by providing evidence that "Defendant accommodated women by allowing them to work janitorial jobs." Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 8. She admitted in her deposition and brief, however, that she "assum[ed] [these women] were pregnant [] and did not know how and why they were moved to janitorial jobs." *Id*. at 8-9. This testimony does not satisfy the fourth element because it refers only to *pregnant* women when the correct comparison is *non-pregnant* women. And even if Plaintiff's assumption was wrong and these employees in fact were non-pregnant women, Plaintiff provides no evidence whatsoever showing that they were "similarly[ ]situated in all respects." *In re Trib. Media Co.*, 902 F.3d 384, 403 (3d Cir. 2018) (citation omitted). Plaintiff also has not provided any evidence of similarly situated male employees. So, she "has not identified any non-protected similarly situated individuals who were treated more favorably than he[r]." *McNeil v. Greyhound Lines, Inc.*, 69 F. Supp. 3d 513, 525 (E.D. Pa. 2014).

When a plaintiff does not provide "similarly-situated comparisons," they may still satisfy the fourth element by "'establish[ing] some causal nexus between [the plaintiff's] membership in

8

a protected class' and the adverse employment action." *Evans v. Sch. Dist. of Philadelphia*, 2024 WL 4199010, at *2 (3d Cir. Sept. 16, 2024) (quoting *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)). Beyond the insufficient comparator evidence, Plaintiff points to the fact that she was not accommodated to demonstrate that Defendant failed to accommodate her because of her pregnancy. But the mere fact that Plaintiff was pregnant and not accommodated does not automatically establish discrimination. Rather, the inquiry here is "highly factually dependent" and it is important to consider the adverse employment action in light of "[t]he surrounding circumstances" to determine whether Plaintiff raises an "inference of discrimination." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 595 (E.D. Pa. 2017) (quoting *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 214 (E.D. Pa. 2010)).

The surrounding circumstances here show that Defendant made good faith efforts to accommodate Plaintiff, even if such efforts may not have been successful. For instance, after Defendant received Plaintiff's accommodation requests, it moved her to a job that it believed would be "light duty" and then offered to move her to a different department or provide her with a respirator to limit her exposure to lead and acid. Pl.'s Statement of Undisputed Facts at ¶¶ 81, 83, 91, 93. Plaintiff immediately quit instead of accepting—or even further discussing—these accommodations. *Id*. at ¶ 96. So, while there may be a factual dispute as to whether Plaintiff was actually accommodated, the Court cannot conclude based on these facts that this failure happened because of Plaintiff's pregnancy. Plaintiff then does not satisfy the fourth element of her *prima facie* case and her sex discrimination claims fail at summary judgment. *See Collins*, 247 F. Supp. 3d at 596 ("Inasmuch as Plaintiff has failed to point to any evidence of record to show unlawful discrimination . . . she has failed to show there was discriminatory animus."). Further, "[b]ecause [Plaintiff] has not established a *prima facie* case, there is no need for the Court to consider the

remaining steps of the *McDonnell Douglas* framework." *Fennell*, 628 F. Supp. 3d at 579 (E.D. Pa. 2022) (italics added).

### B.     Disability Discrimination

Plaintiff brings an Americans with Disability Act ("ADA") disability discrimination claim against Defendant in Count IV of her Amended Complaint. Disability discrimination claims under the ADA are governed by the *McDonnell Douglas* burden-shifting framework. *See Law v. Garden State Tanning*, 159 F. Supp. 2d 787, 791 (E.D. Pa. 2001) (holding that the *McDonnell Douglas* analysis applies to employment discrimination claims under the ADA).

Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 880 (3d Cir. 2011). To demonstrate a prima facie case of disability discrimination, the plaintiff must show that "(1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations . . . and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." *Gardner v. SEPTA*, 824 F. App'x 100, 105-06 (3d Cir. 2020) (quoting *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). If the plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the defendant to "present a legitimate, non-discriminatory reason for the negative employment decision." *Law*, 159 F. Supp. 2d at 791. To overcome summary judgment, "the plaintiff must then show that the reason presented by the defendant is pretextual." *Id*.

Although there seems to be no disagreement that Plaintiff meets the second element, Defendant disputes the first and third elements. Specifically, Defendant argues that Plaintiff fails to satisfy the first element because she was not "disabled" under the ADA and that she does not

10

establish the third element because there is no evidence that she suffered an adverse employment action due to her alleged disability. Def.'s Mem. Supp. Summ. J., ECF No. 33, at 7. Although the Court finds that Plaintiff meets the first element, her disability dissemination claim fails because she cannot fulfill the final element.

"The Americans with Disabilities Act of 1990 provides that an individual is 'disabled' when he or she suffers, among other things, 'a physical or mental impairment that substantially limits one or more major life activities.'" *Oliver v. Scranton Materials, Inc.*, 2015 WL 1003981, at *7 (M.D. Pa. Mar. 5, 2015) (citing 42 U.S.C. § 12102(1)(A)). "In 2008, Congress passed the ADA Amendments Act (ADAAA), which loosens the standards by which courts are to interpret the ADA's language and specifically provides that '[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.'" *Id*. (citing 42 U.S.C. § 12102(4)(A)). "Thus, while pregnancy by itself may not constitute a disability under the ADA, *see, e.g.*, *Brennan v. Nat'l Tel. Directory Corp.*, 850 F. Supp. 331, 333 (E.D. Pa. 1994), courts interpreting the Act in light of the 2008 amendments have found that complications arising out of pregnancy can constitute disability sufficient to invoke the ADA, and that whether they actually rise to the level of disability is a question of fact." *Id*. (citations omitted).

Plaintiff has demonstrated that she had complication arising out of pregnancy because she had a history of miscarriages. Plaintiff argues that she has established that she suffered pregnancy-related complications by showing that she advised both Defendant's Medical Department and Defendant's HR Department of her history of miscarriages and requested accommodations for her pregnancy. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 11-12. The records cited to support these facts, however, only reveal that she requested accommodations—not that she had a high-risk

11

pregnancy given her history of miscarriages. *See id*. But an independent review of Plaintiff's deposition, coupled with the fact that the Court must "construe the evidence in the light most favorable to the non-moving party," *Anderson*, 477 U.S. at 255, shows that Plaintiff demonstrated that she had a history of multiple miscarriages. *See* Pl.'s Resp. Opp'n Summ. J., ECF No. 34, at App'x 27.

Defendant counters that Plaintiff's history of multiple miscarriage is not enough to satisfy the first element because it does not prove that she was disabled under the ADA. Specifically, Defendant claims that "[i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment." *Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 799 F. Supp. 2d 473, 483 (E.D. Pa. 2011). Defendant also argues that Plaintiff's medical records contradict her claim that she had a high-risk pregnancy by reporting that "[h]er obstetrical history is significant for low [r]isk." Def.'s Mem. Supp. Summ. J., ECF No. 33, at Exhibit Y.

At this point, though, Plaintiff has shown that she had complications arising out of the pregnancy because she had a history of miscarriages. Whether this history "actually rise[s] to the level of disability is a question of fact" best left to a jury. *Oliver*, 2015 WL 1003981, at *7 (citing *Nayak v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2013 WL 121838, at *2-3 (S.D. Ind. 2013); *Mayorga v. Alorica, Inc.*, 2012 WL 3043021, at *5 (S.D. Fla. 2012)). Thus, Plaintiff establishes the first element of her disability discrimination claim.

To satisfy the third element, the "plaintiff must provide evidence that supports a logical inference of causation between the alleged disability and the adverse employment action." *Mengel v. Reading Eagle Co.*, 2013 WL 1285477, at *4 (E.D. Pa. Mar. 29, 2013) (citing *Yeskey v.*

*Pennsylvania Department of Corrections*, 118 F.3d 168 (3d Cir. 1997)) (other citations omitted). Here, Plaintiff does not provide any comparator evidence or direct evidence of disability discrimination. Instead, she again relies on the argument that Defendant did not accommodate her. As the Court explained in the sex discrimination context, however, the mere fact that Plaintiff has a disability and was not accommodated is not enough. She must demonstrate that she was not accommodated *because of her disability*. And, as the Court found previously, the circumstances in this case do not indicate that Defendant failed to accommodate her because of her pregnancy. So, Plaintiff does not meet the third element of her *prima facie* and her disability discrimination claim is dismissed at summary judgment. *See Taylor v. Lincare, Inc.*, 2016 WL 3849852, at *4 (D.N.J. July 15, 2016 (dismissing disability discrimination claim where plaintiff "has pled no facts that suggest that he was terminated under circumstances that give rise to an inference of unlawful discrimination"). Given Plaintiff's failure to raise an inference of intentional discrimination, the Court will not evaluate the remaining steps of the *McDonnell Douglas* framework.

  **C.**   **Retaliation**

  Plaintiff brings Title VII, ADA, and PHRA retaliation claims in Counts II, III, and VII of her Amended Complaint. The *McDonnell Douglas* burden-shifting framework applies to her relation claims. *See Hanafy v. Hill Int'l, Inc.*, 669 F. Supp. 3d 419, 432 (E.D. Pa. 2023).

  The framework is the same. The plaintiff must first establish a *prima facie* case of retaliation. *Id*. at 433. "To establish a prima facie case for retaliation, the elements under the each statutory regime are 'essentially the same': [the plaintiff] 'must show that (1) [s]he engaged in a protected activity (such as taking FMLA qualifying leave, requesting a reasonable accommodation under the ADA, or making a complaint regarding an activity prohibited by Title VII), (2) [s]he suffered an adverse employment decision, and (3) there was a causal connection between the

protected activity and the adverse employment decision.'" *Id*. at 437-38 (citations omitted). "Once [the plaintiff] makes out [her] prima facie case, the burden of production shifts to [the defendant] to offer a 'legitimate non-discriminatory [justification] for the adverse employment action.'" *Id*. at 433 (citations omitted). "If [the defendant] does so, the third step in the framework shifts the burden of production back to [the plaintiff] to 'provide evidence from which a factfinder could reasonably infer that [the defendant's] proffered justification is merely a pretext for discrimination.'" *Id*. (citations omitted).

Defendant argues that Plaintiff has failed to meet all the elements of her retaliation claims. Because the Court already has concluded that Plaintiff has established that she suffered an adverse employment decision, the second element is met in this context and the court will not analyze it. Turning to the remaining elements, the Court finds that the first element also is met but not the third one.

Under the first element—whether she engaged in protected activity—Plaintiff claims that two of her activities constitute protected activity: requesting accommodations and complaining to Defendant's HR Department that her accommodations were not being fulfilled. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 14-15. Both are protected activity.

First, Plaintiff claims that she engaged in protected activity by requesting accommodations. *Id*. "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) (citation omitted). The plaintiff must have a "reasonable, good faith belief that [she] was entitled to request the reasonable accommodation [she] requested." *Id*. (citations omitted). "Plaintiff engaged in protected activity when requesting a reasonable accommodation because no

14

facts [] suggest that Plaintiff was motivated by anything other than good faith when [s]he requested a reasonable accommodation:" she found out she was pregnant and then made several accommodation requests because her pregnancy was high risk considering her history of miscarriages. *Angelis v. Philadelphia Hous. Auth.*, 2024 WL 643142, at *20 (E.D. Pa. Feb. 15, 2024); Pl.'s Statement of Undisputed Facts at ¶¶ 56, 67, 79, 89.

Second, Plaintiff argues that she also engaged in protected activity by complaining to Defendant's HR Department that her accommodations were not being fulfilled. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 14. "[P]rotected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (citations omitted). "[C]omplaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'" *Mikell v. Marriott Int'l, Inc.*, 789 F. Supp. 2d 607, 618-19 (E.D. Pa. 2011) (citations omitted).

Here, Plaintiff claims in her deposition that she spoke to an employee in Defendant's HR Department and told them that she was pregnant, that her accommodations were not being provided, and that she was being discriminated against because of her pregnancy because other pregnant women were being accommodated. Pl.'s Statement of Undisputed Facts at ¶¶ 85, 86. This complaint qualifies as protected activity because it sufficiently put Defendant on notice that Plaintiff believed she was being discriminated against because of her pregnancy. *See Moore v. City of Philadelphia*, 461 F.3d 331, 344 (3d Cir. 2006) (holding that plaintiffs engaged in a protected activity when they complained to management that black police officers were being treated less

15

favorably than white ones). Therefore, both Plaintiff's actions constitute protected activity, and she meets the first element.

But Plaintiff cannot establish the third element—whether there was a causal connection between her protected activity and the adverse employment decision. "A causal connection can be supported by temporal proximity, which 'may create an inference of causation if the timing is unusually suggestive.'" *Hanafy*, 669 F. Supp. 3d at 438 (citations omitted). Plaintiff argues that she has established temporal proximity by showing that she requested an accommodation, that Defendant failed to provide one, and that she resigned all on the same day. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 15 (citing *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation.")). As Defendant points out, "[a] causal link between an employee's protected activity and an adverse employment action can be broken by an intervening event," including "resignation." *Checa v. Drexel Univ.*, 2016 WL 3548517, at *6-7 (E.D. Pa. June 28, 2016). Plaintiff's temporal proximity argument fails then because by resigning, "Plaintiff prompted this close temporal proximity, not Defendant." *Id*. at *7.

Without temporal proximity, there is no other evidence to satisfy the third element. The plaintiff "can also establish causation by demonstrating 'a pattern of antagonism after the protected act' or by showing 'the record taken as a whole supports an inference of retaliation.'" *Hanafy*, 669 F. Supp. 3d at 438 (citations omitted). Plaintiff only relies on temporal proximity. Yet the Court's independent review of the record does not reveal a pattern of antagonism or any other facts to support an inference of retaliation. After Plaintiff informed Defendant that she was not being accommodated, the undisputed facts show that Defendant offered to accommodate her by moving her to the dry end of her department and offering her a respirator. Pl.'s Statement of Undisputed

16

Facts at ¶¶ 91, 93. Plaintiff may have preferred to be moved to another building. However, Defendant's refusal to provide her with that exact accommodation does not show a pattern of antagonism or raise an inference of retaliation. In fact, it reveals the opposite: that Defendant made good faith efforts to accommodate her. This Court will not now "sit as a kind of super-personnel department that reexamines [Defendant's] business decisions." *Andersen v. Mack Trucks, Inc.*, 118 F. Supp. 3d 723, 750 (E.D. Pa. 2015) (citations omitted). Therefore, Plaintiff's retaliation claims fall at summary judgment because she cannot meet the third element of her *prima facie* case. Like in the sex and disability discrimination contexts, the Court will not evaluate the remaining *McDonnell Douglas* steps since Plaintiff cannot even make a *prima facie* case.

### D. Constructive Discharge

Plaintiff brings a constructive discharge claim in Count V of her Amended Complaint. To demonstrate constructive discharge, the plaintiff must show "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Mandel*, 706 F.3d at 169 (citation omitted). The Third Circuit "employ[s] an objective test and thus an employee's subjective perceptions of unfairness or harshness do not govern a claim of constructive discharge." *Id*. (citation omitted). "In determining whether an employee was forced to resign, [the Third Circuit] consider[s] a number of factors, including whether the employee was threatened with discharge, encouraged to resign, demoted, subject to reduced pay or benefits, involuntarily transferred to a less desirable position, subject to altered job responsibilities, or given unsatisfactory job evaluations." *Id*. at 169-70.

Based on the record, the Court cannot find enough evidence to show that Plaintiff's conditions of employment were so intolerable that a reasonable person would have resigned. Plaintiff contends that she was constructively discharged because she was reassigned to an

undesirable position that conflicted with her pregnancy since it exposed her to lead and acid. Pl.'s Resp. Opp'n Summ. J., ECF No 34, at 16. The Court is sympathetic to the argument that a reasonable person would resign to protect their pregnancy from dangerous work conditions.

The issue here is that Defendant offered a solution for Plaintiff's exposure to lead and acid—a respirator that used charcoal filters to eliminate acid fumes. Pl.'s Statement of Undisputed Facts at ¶ 93. Plaintiff does not challenge the reasonableness or effectiveness of the respirator. Instead, her contention seems to be that she should have been moved to a different building. But her subjective opinion about what the best accommodation was in this case is not enough on its own to show that a reasonable person would have resigned, especially if their employer offered an accommodation that addressed their concern. *See Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) ("[T]he law does not permit an employee's subjective perceptions to govern a claim of constructive discharge."). Thus, Plaintiff's constructive discharge claim does not survive summary judgment.

## V.  CONCLUSION

For the reasons explained above, Plaintiff has failed to establish her claims for sex discrimination, disability discrimination, retaliation, and constructive discharge. So, the Court grants Defendant's Motion for Summary Judgment. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge